IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge Christine M. Arguello

Civil Action No. 22-cv-00098-CMA-NRN

JERRY MICHAEL GYRION, JR.,

      Plaintiff,

v.

DILLON COMPANIES, LLC, *d/b/a* King Soopers, Inc., *a/k/a* D620 Kroger Central/King Soopers,

      Defendant.

---

## ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

---

This matter is before the Court on Defendant Dillon Companies, LLC's Motion for Summary Judgment. (Doc. # 47.) For the following reasons, the Court denies the Motion.

## I.     BACKGROUND[1]

This is a slip and fall case. Defendant owns and operates a grocery store in the Columbine Knolls Village shopping center in Littleton, Colorado. (Doc. # 47-5 at 1.) The "common areas" of Columbine Knolls Village are maintained by the nonparty KPP-WADS ("KPP")—the owner of the shopping center. (*Id.* at 2.) The maintenance for which KPP is responsible includes "[s]now and ice removal in an expeditious fashion."

---

[1] The following material facts are undisputed. (Doc. # 47 at 4–6; Doc. # 54 at 4–6; Doc. # 64 at 2–6.)

(*Id.* at 4.) KPP, as "Owner," contracted with nonparty G&E Real Estate Management Services, Inc., doing business as Newmark Knight Frank ("Newmark"), for property management of Columbine Knolls Village. (Doc. # 47-1 at 1.) Defendant is not a party to this contract. (*Id.*) The contract between KPP and Newmark requires Newmark to "directly select, supervise and engage . . . all independent contractors, suppliers and vendors, in the operation, repair, maintenance and servicing" of Columbine Knolls Village. (*Id.* at 7.) Newmark, in turn, contracted with nonparty Martinson Snow Removal ("Martinson") for snow and ice removal at the shopping center. (Doc. # 47-2.) Defendant is not a party to this contract. (*Id.* at 1.) The snow removal contract requires Martinson to "plow[]/remove[ snow] from the entire area, including driveways, parking lots, loading dock areas, and entrances . . . whenever snow depth exceeds two inches (2")." (*Id.* at 10.)

At some point several years before December 2019, Defendant placed a stationary trailer, used for storage, beside the loading dock receiving doors. (Docs. ## 47-4, 54-5, 64-3; Doc. # 54-2 at 3-4; Doc. # 64-4 at 1; Doc. # 64-5 at 1.)[2] On December 7, 2019, thick ice was observed along the length of this trailer. (Doc. # 54-2 at 3-4; Doc. # 64-4 at 1.) One of Defendant's employees stated that the ice developed in this area due to lack of sunlight. (Doc. # 64-4 at 1.)

Plaintiff Jerry Michael Gyrion, Jr., a truck driver, alleges that he made a delivery to Defendant on December 7, 2019, during which he backed his semi-truck up to the delivery receiving door directly adjacent to the storage trailer in the loading dock area.

---

[2] The Court cites the Bates stamped page number of the evidence the parties provided.

(Doc. # 6 at ¶¶ 8–10; Doc. # 47-3.) Mr. Gyrion claims that upon exiting his truck, he noticed how icy the surrounding area was. (Doc. # 6 at ¶ 11.) Before he was able to "get to safe ground," Mr. Gyrion alleges "his left foot slipped and he began sliding around before falling to the ground, landing on the left side of his body." (*Id.* at ¶ 13.) Mr. Gyrion claims that as a result he "suffered serious bodily injury including but not limited to injuries to his left knee, left arm, left elbow, left wrist, and left shoulder, as well as injuries to his right arm and knee." (*Id.* at ¶ 23.)

Mr. Gyrion initiated this action against Defendant on December 3, 2021, alleging one claim pursuant to the Colorado Premises Liability Act ("CPLA"). (Doc. # 6.) Mr. Gyrion sought leave to amend his Complaint, to add a negligence claim, after the deadline for amendments had passed. (Doc. # 60.) However, on April 11, 2023, the Court—over Mr. Gyrion's Objection (Doc. # 75)—affirmed the United States Magistrate Judge's Recommendation (Doc. # 71) that leave to amend be denied. (Doc. # 77.)

On December 30, 2022, Defendant filed the instant Motion for Summary Judgment. (Doc. # 47.) Mr. Gyrion filed his Response (Doc. # 54), and Defendant followed with its Reply (Doc. # 64). The matter is now ripe for review.

## II.   STANDARD OF REVIEW

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it is essential to the proper disposition of the claim under the relevant substantive law. *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001). A dispute is "genuine" if the evidence is such

that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee, Okla.*, 119 F.3d 837, 839 (10th Cir. 1997). When reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. *See id.* However, conclusory statements based merely on conjecture, speculation, or subjective belief do not constitute summary judgment evidence. *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact and entitlement to judgment as a matter of law. *Id.* In attempting to meet this standard, a movant who does not bear the ultimate burden of persuasion at trial does not need to disprove the other party's claim; rather, the movant need simply point out to the Court a lack of evidence for the other party on an essential element of that party's claim. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).

Once the movant has met its initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). The nonmoving party may not simply rest upon its pleadings to satisfy its burden. *Id.* Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Adler*, 144 F.3d at 671. Stated differently, the party must provide "significantly probative evidence" that would support a verdict in its favor. *Jaramillo v. Adams Cnty. Sch. Dist. 14*, 680 F.3d 1267, 1269 (10th

4

Cir. 2012). "To accomplish this, the facts must be identified by reference to affidavits,

deposition transcripts, or specific exhibits incorporated therein." *Adler*, 144 F.3d at 671.

### III.    DISCUSSION

Defendant argues that summary judgment should be granted because it is not

the landowner of the loading dock area where Mr. Gyrion fell. (Doc. # 47 at 8–11.) The

CPLA outlines the circumstances under which a landowner may be held liable for injury

occurring on privately owned land. Colo. Rev. Stat. § 13–21–115; *see also Pierson v.*

*Black Canyon Aggregates, Inc.*, 48 P.3d 1215, 1219 (Colo. 2002). Under the CPLA, the

term "landowner" encompasses both: (1) "an authorized agent or a person in

possession of real property"; and (2) "a person legally responsible for the condition of

real property or for the activities conducted or circumstances existing on real property."

Colo. Rev. Stat. § 13–21–115(1). The determination of landowner status is a legal

question, but it is a "fact-specific, case-by-case inquiry." *Larrieu v. Best Buy Stores,*

*L.P.*, 303 P.3d 558, 559 (Colo. 2013).

The Supreme Court of Colorado has explained that a party possesses land when

it "occupies the land with intent to control it, although not necessarily to the exclusion of

all others." *Pierson*, 48 P.3d at 1219–20. Yet, "possession necessarily connotes the

right to exclude at least some others." *Jordan v. Panorama Orthopedics & Spine Ctr.*,

PC, 346 P.3d 1035, 1042 (Colo. 2015) (citing *Esser v. McIntyre*, 661 N.E.2d 1138, 1143

(Ill. 1996) (holding that the defendant "was not an occupier of land because he did not

intend to control the common area," which was "open to anyone who might choose to

walk through")). A party is not in possession where it maintains exclusive control over

adjacent areas. *Id.* at 1043 (concluding defendant was not the "landowner" of a sidewalk despite having exclusive use of reserved spaces in an adjacent parking lot). Finally, where another party has ordinary maintenance responsibilities over an area, possession—and thereby landownership status—is not established by a duty to ensure the third party fulfills its maintenance obligations. *Id.* at 1042–43.

As it relates to the CPLA's alternate definition of "landowner," parties "legally conduct[] an activity . . . or legally create[] a condition on the property," Colo. Rev. Stat. § 13–21–115(1), when they "are otherwise legally responsible for the conditions, activities, or circumstances on the property—even though such persons are not in possession of the property." *Pierson*, 48 P.3d at 1221. In other words, a party that impacts the land may still be considered a "landowner" pursuant to this definition, despite not being on the title or lease. However, the Colorado Supreme Court has warned that the question of whether a defendant's actions **caused** plaintiff's injuries is distinct from whether a party "was responsible for the condition of the property when and where the accident occurred"—thereby making it a landowner. *Jordan*, 346 P.3d at 1043 (citing *Pierson*, 48 P.3d at 1221).

Mr. Gyrion argues that Defendant is a landowner of the loading dock under both of CPLA's definitions. First, he argues that Defendant is in possession of the loading dock because it is used exclusively for deliveries to Defendant's grocery store. (Doc. # 9–10.) Further, Mr. Gyrion argues that Defendant "legally conducted an activity . . . [or] created a condition on the property" by placing the storage container—resulting in the buildup of ice alongside it—adjacent to the loading dock area. (*Id.* at 7–11.)

Upon consideration of the Motion, the related briefing, and the applicable law, the Court finds that there are significant, genuine disputes of material fact that preclude summary judgment on Mr. Gyrion's CPLA claim. The Court must "view the evidence in the light most favorable to the non-moving party." *Allen*, 119 F.3d at 839. Moreover, the Court is "mindful that a ruling which deprives a party of a determination of the facts by a jury 'should be cautiously and sparingly granted.'" *Greene v. Safeway Stores, Inc.*, 98 F.3d 554, 560 (10th Cir. 1996) (quoting *Cockrell v. Boise Cascade Corp.*, 781 F.2d 173, 177 (10th Cir. 1986)).

The parties agree on some material facts including that nonparties had contractual obligations related to maintenance and snow removal of the loading dock. However, Defendant and Mr. Gyrion present different accounts of several facts which are essential to determining if Defendant is a statuary landowner of the specific site of Mr. Gyrion's fall. The genuine disputes of material fact precluding summary judgment include, but are not limited to:

- the extent to which the loading dock can be characterized as one of Columbine Knolls Village's "common areas,"[3] including whether Defendant had "the right to exclude at least some others," *Jordan*, 346 P.3d at 1042, from the loading dock;

---

[3] The Agreement for Operation and Maintenance for Common Areas filed with the Court (Doc. # 47-5) notes that "common areas," as used in that document, was defined in the Declaration of Covenants, Conditions and Restrictions for the shopping center. (*Id.* at 1.) As that Declaration has not been filed with the evidence accompanying the parties' briefing, the Court cannot make a legal determination regarding the proper designation of the loading dock and/or Defendant's rights associated with the shopping center's "common areas."

- whether by placing a storage container in the loading dock area, Defendant impacted the surrounding land; and

- the exact location of Mr. Gyrion's fall—specifically whether he fell on the ice observed **alongside** the trailer, or in the area directly adjacent to his truck's cab. *Compare* (Docs. ## 47-3; 47-4) with (Doc. # 54-2 at 3-4; Doc. # 64-4 at 1.)

Because these facts are material to determining if Defendant is a statutory landowner of the area in which Mr. Gyrion fell, summary judgment is inappropriate. *See Anderson*, 477 U.S. at 255 (when ruling on a motion for summary judgment, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge").

In sum, Defendant has not established that it is entitled to summary judgment. It will be up to the factfinder to weigh any evidence demonstrating Defendant's rights to the loading dock area, decide the credibility of the witnesses, and to resolve the disputed issues presented in this case.

### IV.   CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment (Doc. # 47) is DENIED.

DATED: April 13, 2023

BY THE COURT:

CHRISTINE M. ARGUELLO
Senior United States District Judge

8